UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**STEVEN JOSEPH RODNEY**                    **CIVIL ACTION NO. 22-4556**

**SECTION P**
**VS.**
**JUDGE TERRY A. DOUGHTY**

**WARDEN HEDGEMON, ET AL.**        **MAG. JUDGE KAYLA D. MCCLUSKY**

REPORT AND RECOMMENDATION

Plaintiff Steven Joseph Rodney, a prisoner at Riverbend Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately August 25, 2022, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Warden Hedgemon, Assistant Warden Deville, Assistant Warden Russell, Deputy John Brown, and Deputy Ronnie[1].[2]

For reasons that follow, the Court should retain Plaintiff's request for punitive damages and his conditions of confinement claims against Deputies Brown and Ronnie in their individual capacities. The Court should dismiss Plaintiff's remaining claims, including his request for compensatory damages.

---

[1] Plaintiff also appears to refer to Deputy Ronnie as Deputy Berry. [doc. # 11].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

**Background**

Plaintiff claims that Defendants Ronnie and Brown "told [him] that because [he] was [not] in bed[3] after what is deemed 'lockdown hours' (apparently anytime after 10:30 p.m. when all movement throughout the dormitory is supposed to cease), it was mandatory that [he] come with them for the purpose of being placed in solitary confinement until breakfast (approximately six hours)." [doc. # 1, p. 5]. Plaintiff states that, although he emphatically tried to inform them that he was on his way to the bathroom area, "they were set on relocating [him]." *Id.*

Plaintiff alleges that when Ronnie and Brown opened the "door to the segregation cell, [he] observed several other detainees pressed together much like sardines in a can, all with their noses touching the wall." *Id.* Plaintiff is claustrophobic and was frightened of the crowded cell. *Id.* He informed Deputies Brown and Berry "of his diagnosed phobia of being in such small spaces" and told them that he "could not be squished into such spaces[,]" but they pushed him inside "despite [his] appeal." [doc. #s 1, p. 5; 11]. Plaintiff claims that he was "forced to face a wall on [his] knees along with" seven to twelve other inmates in a segregation cell which was "intended to hold only two prisoners max." *Id.* He was "made to kneel on concrete for several hours with [his] nose touching the wall . . . ." [doc. # 11]. He was "unable to rise or reposition [] meaningfully due to constant camera surveillance[.]" *Id.* There was "no air, no means of gaining any comfort whatsoever." *Id.*

Plaintiff remained in the cell "several hours[.]" [doc. # 1, p. 5]. He experienced mental and emotional trauma. [doc. # 11]. He writes: "The defendants listed knew of the harm they caused by the groans and the screams of agony and profanity by grown men." *Id.*

---

[3] Plaintiff writes that he "was in bed after what is deemed 'lockdown hours . . . .'" *Id.* However, the undersigned presumes from context that Plaintiff inadvertently omitted the word, "not," and intended to write that he was "*not* in bed . . . ."

Plaintiff indicates that prisoners are allowed to leave their beds after "lockdown hours" to use the restroom, but he suggests that deputies still place him in lockdown when they find him away from his bed, even though he tells them that he is "on his way to the bathroom area[.]" [doc. #s 1, p. 5; 11]. He alleges that officers' "joking manner suggests that such traumatic experiences are seen as entertainment for the night shift and not regarded as harmful or inhumane at all." [doc. # 1, p. 5].

Upon release from the cell, he "was threatened with the same action" if he was caught again. *Id.*

Plaintiff claims that two unknown deputies "'caught'" him again and that "this extreme drama happened once more . . . ." *Id.* at 6.

Plaintiff is "fearful of even going to use the restroom at night and [is] uncomfortable most evenings as a result." *Id.* at 5. He is "unable to go to the bathroom after 'lockdown hours' (anytime after 10:30 p.m. when all inmates must be confined to their respective beds except for the purpose of going to the restroom) for fear that the experience already endured may repeat itself a third time[.]" *Id.* He has urinated on himself "as a result, which is a public humiliation." *Id.*

Plaintiff claims that Defendants Russell and Hedgemon have not responded to his grievances and "A.R.P.'s."[4] *Id.*

Plaintiff claims that the crowded cell was a "code violation due to the fire hazard . . . ." *Id.*

---

[4] By "A.R.P.'s," Plaintiff presumably refers to requests or grievances he submitted using an administrative remedy procedure.

Plaintiff seeks $12,000.00 in punitive damages and compensation for mental anguish. [doc. # 1, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Conditions of Confinement

Plaintiff claims that Deputies Ronnie and Brown essentially forced him to choose between (A) foregoing the restroom and risking humiliation from urinating on himself or injury and (B) being (i) packed with seven to twelve other inmates in a cell designed for two inmates, experiencing fear from claustrophobia and a lack of air; (ii) forced to kneel with his nose touching the wall for approximately six hours; and (iii) threatened with physical violence.

Construing these allegations liberally and in his favor, he plausibly alleges that Deputies Ronnie and Brown knew of and disregarded a substantial risk of serious harm and that he endured sufficiently serious deprivations of the minimal civilized measure of life's necessities.[6] While Plaintiff only suffered the conditions for approximately six hours each occasion, he alleges conditions which, in combination and when repeated, plausibly deprived him of, *inter alia*, physical and mental health, safety, and dignity. *See generally Gates v. Collier*, 501 F.2d 1291, 1306 (5th Cir. 1974) (finding that the following forms of punishment violated the Eighth Amendment: "handcuffing inmates to the fence and to cells for long periods of time . . . and

---

[6] This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

forcing inmates to stand, sit or lie on crates, stumps, or otherwise maintain awkward positions for prolonged periods."); *Hope v. Pelzer*, 536 U.S. 730 (2002).[7]

The Court should retain these conditions of confinement claims.

### 3. Assistant Warden Deville

Plaintiff names Assistant Warden Deville as a defendant, but he does set forth any allegations against Deville.[8] [doc. # 1, p. 1].

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, Plaintiff does not raise a claim against Deville. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials

---

[7] *See also Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) ("Barker was handcuffed behind his back for twelve hours, during which time he missed a meal and was unable to sit or lie down without pain, use the restroom, or obtain water from the fountain. Thus, for no legitimate penological purpose, Barker was denied adequate access to water and a restroom, and forced to maintain an uncomfortable position for an extended period of time, subjecting him to a significant risk of wrist and arm problems, dehydration and thirst, and pain and damage to the bladder. This constitutes a denial of the minimal civilized measures of life's necessities."); *James v. LeBlanc*, 2011 WL 6842516, at *5 (W.D. La. Nov. 16, 2011), *report and recommendation adopted,* 2011 WL 6842512 (W.D. La. Dec. 29, 2011) ("The requirement that the inmates, still restrained, kneel upright for several hours without a bathroom break was wanton treatment not done of necessity to control any misconduct, but as physical punishment for prior conduct. Plaintiff alleges that some defendants told him directly that the inmates were being forced to kneel as punishment for their rule violation in the field."); *Hutto v. Finney*, 437 U.S. 678, 682-83 (1978) (finding a constitutional violation where there was rampant violence, "lack of professionalism and good judgment on the part of maximum security personnel[,]" and "an average of 4, and sometimes as many as 10 or 11, prisoners [] crowded into windowless 8′x10′ cells containing no furniture other than a source of water and a toilet that could only be flushed from outside the cell.").

[8] The undersigned instructed Plaintiff to provide a separate description of what, exactly, each defendant did to violate his rights. [doc. # 10].

7

failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant).

At best, Plaintiff alleges that "each of the aforementioned officers are equally responsible for the abuse and violation of rights that [he] experienced and witnessed first hand." [doc. # 11]. However, the Court "disregards bare assertions of collective responsibility, unsupported by concrete factual allegations." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *see Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."). The Court should dismiss Assistant Warden Deville.

## 4. Code Violation

Plaintiff states that the crowded cell was a "code violation due to the fire hazard . . . ." [doc. # 1, p. 5].

The violation of a safety or health code would only be "instructive in certain cases," would only establish recommended goals, and would "not establish the constitutional minima . . . ." *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982); *Bell v. Wolfish*, 441 U.S. 520, n.27 (1979).[9] The Court should dismiss this claim.[10]

---

[9] *See Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure.") (citations omitted).

[10] The undersigned will, however, consider these allegations in the context of Plaintiff's conditions of confinement claims. *See Smith v. Sullivan*, 611 F.2d 1039, 1045 (5th Cir. 1980) (observing that "state standards may sometimes serve as a useful guide in a federal court's determination and redress of constitutional deprivations[.]").

**5. Supervisory Liability**

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff alleges that he "submitted several requests to the Wardens (Russell and Hedgemon) for [himself] and the general population not to be treated in this manner, but to no avail." [doc. # 1, p. 6]. He alleges further: "It seems that the outcry has only produced an increase of the same activity, and I am therefore persecuted for drawing attention to the matter. My grievances and A.R.P.'s have also been unreliable as they illicit no reply." *Id.*

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*,

92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

Aside from alleging that Defendants failed to answer his grievances and requests, Plaintiff does not allege that Russell or Hedgemon affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between their conduct and any alleged constitutional violation.[11] Instead, Plaintiff pleads only vicarious liability, essentially naming these individuals as defendants solely because of the positions or titles they hold. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Nor does Plaintiff allege that these Defendants implemented an unconstitutional policy, practice, custom, or procedure that deprived him of any constitutional right. In fact, Plaintiff suggests that there *is* a policy which allows prisoners to leave their beds to use the restroom. [doc. # 11]. He suggests that Deputies Ronnie and Brown violated the policy by placing him in lockdown presumably for their entertainment. [doc. # 1, p. 5].

---

[11] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

Accordingly, the Court should dismiss Plaintiff's claims against Russell and Hedgemon.[12]

**6. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Plaintiff seeks compensation for mental anguish. [doc. # 1, p. 4].

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff suffered mental and emotional trauma. [doc. # 11]. He also states that "kneeling on concrete for several hours several times" could "perhaps" cause long-term residual injuries. *Id.*

---

[12] *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (opining, where a plaintiff "named the supervisory officials as defendants and alleged generally that they failed in their responsibilities as department heads[,]" that the plaintiff "failed to allege any particular defendant's personal involvement in conduct that caused constitutional deprivation" and failed to allege "that any of the defendants implemented an unconstitutional policy causally related to his injury."); *Taylor v. LeBlanc*, 851 F. App'x 502 (5th Cir. 2021).

11

Plaintiff "brought" this action when he was incarcerated. [doc. # 1, p. 2]. He does not allege that he suffered greater-than-de-minimis physical injury[13]—or any other compensable injury or damage—*because* of any defendant's actions or failures. Moreover, he does not allege that he was a victim of a "sexual act" as defined in 18 U.S.C. § 2246.

The Court should, therefore, dismiss Plaintiff's request for compensatory damages because he alleges only that Defendants caused him mental, emotional, or de-minimis physical injuries.[14]

**7. Official Capacities of Deputies Brown and Ronnie**

Plaintiff names all Defendants in their individual and official capacities. [doc. # 1, p. 4]. For reasons above, the undersigned recommends retaining only Plaintiff's claims against Deputies Brown and Ronnie. The Court should, however, dismiss Plaintiff's claims against Brown and Ronnie in their official capacities because Plaintiff does not allege that Brown or Ronnie made policy.

If a defendant is not a policymaker, the defendant is "not the proper defendant for an official capacity claim . . . ." *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an

---

[13] Plaintiff speculates that "perhaps" he suffered long-term injuries that have yet to manifest. His speculative concern, however, does not plausibly constitute greater-than-de-minimis physical injury. *See Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001) (finding that an inmate was precluded from recovering damages under Section 1983 for an increased risk of developing asbestos-related injury); *Hawkins v. Trents Flying Serv.*, 45 F. App'x 325 (5th Cir. 2002) ("Further, although the complaint speculates that medical care may or will be necessary in the future, it makes no allegation of a prior physical injury, as required under the PLRA."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[14] "Despite the limitations imposed by § 1997e(e), . . . a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights." *Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 605-06 (5th Cir. 2008).

official capacity claim against the District Attorney's Office."); *see Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 442 (5th Cir. 2008) ("Because no evidence has been presented that Officer Crawford was, at any time relevant to this proceeding, a policymaker in the WVPD, we affirm the district court's dismissal of the claim against him in his official capacity.").

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that the following be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted: Plaintiff Steven Joseph Rodney's request for compensatory damages, claims against Deputies Ronnie and Brown in their official capacities, and claims against Warden Hedgemon, Assistant Warden Deville, and Assistant Warden Russell.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 2nd day of December, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge