UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

STEVEN JOSEPH RODNEY                    CIV. ACTION NO. 3:22-04556 SEC P

VERSUS                                  JUDGE TERRY A. DOUGHTY

WARDEN HEDGEMON, ET AL.                 MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion for summary judgment [doc. # 24] filed by remaining Defendants, John Brown and Ronnie Berry.  The motion is opposed.  For reasons detailed below, it is recommended that Defendants' motion for summary judgment be GRANTED, and Plaintiff Steven Rodney's remaining claims be DISMISSED, without prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

## Procedural History

On or about August 25, 2022, Plaintiff Steven Rodney ("Rodney"), an inmate confined at the Riverbend Detention Center ("RDC"), filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against various RDC officials, including Warden Hedgemon, Assistant Warden Deville, Assistant Warden Russell, Deputy John Brown ("Brown" or "Deputy Brown"), and Deputy Ronnie Berry ("Berry" "Deputy Berry").  Rodney contends that, when he tried to use an RDC restroom after "lockdown hours," he was intercepted by Deputies Brown and Berry who placed him in solitary confinement, in a crowded cell with seven to twelve other inmates, and then forced him to kneel on concrete for several hours with "no air" and no respite.  (Compl.).

Upon release from the cell, Rodney "was threatened with the same action," if he was caught again. *Id*. As a result, Rodney is afraid to use the restroom at night, which has caused him to urinate on himself. *Id*. Rodney requested $12,000 for punitive damages and mental anguish. *Id*.

On December 5, 2022, the undersigned conducted an initial review of Rodney's pleadings and recommended dismissal of all claims and parties, save for his request for punitive damages and his conditions of confinement claims against Deputies Brown and Berry, in their individual capacities. (Report and Recommendation ("R&R") [doc. # 12]). On December 27, 2022, the District Court adopted the R&R and entered a corresponding judgment. (Judgment [doc. # 14]).

Following a period for discovery, remaining Defendants, Brown and Berry, filed the instant motion for summary judgment on September 7, 2023, seeking dismissal of Rodney's claims for failure to exhaust administrative remedies.

Rodney filed an opposition to the motion for summary judgment and a "Brief," on November 16 and December 6, 2023, respectively. [doc. #s 33-34]. He also petitioned for and received an extension of time until December 22, 2023, in which to submit a supplemental opposition to the pending motion for summary judgment. *See* doc. #s 35-36. However, he never did so. Moreover, Defendants did not file a reply brief. Accordingly, the matter is ripe.

<u>Analysis</u>

**I.    Summary Judgment Principles**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b). A fact is "material" if proof of its existence or

2

nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support his claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Finally, when a movant bears the burden of proof on an issue, he must establish "beyond peradventure, i.e., beyond doubt, all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993).

## II.    Administrative Exhaustion

### a)    Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*.

4

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. App'x. 564 (5th Cir. 2003).

If required by the terms of the prison's grievance procedures, a prisoner must exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *See Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion); *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (because grievance policy did not require plaintiff to object when he failed to receive a response to his initial grievance, he was not required to proceed to the additional steps of the process). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates v. St. Tammany Parish*, Civ.

Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014) (and cases cited therein); *see also Hicks v. Lingle*, 370 F. App'x. 497, 499 (5th Cir. 2010); *Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson, supra* (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001).

In 2016, the Supreme Court explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 136 S.Ct. 1850, 1858 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[1]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable. *Id*. First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates. *Id*. (citation omitted).[2] Second, exhaustion is not required

---

[1] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. App'x. 187, 190 (5th Cir. 2015).

[2] The Supreme Court provided some examples,

where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements. *Id*. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.[3]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. App'x. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. App'x. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. App'x. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. "If impediments to filing grievances render remedies unavailable at

---

> [s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

*Ross, supra* (internal citations omitted).

[3] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. App'x. 295, 296 (5th Cir. 2003).

one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008)).

     b)    <u>Brown and Berry's Evidence</u>

In support of their motion for summary judgment, Brown and Berry submitted a declaration from RDC Warden Johnny Hedgemon, who averred, in pertinent part, that

1. The RDC has a three-step administrative remedy procedure ("ARP") that is explained to inmates and set forth in the facility's offender handbook.

2. Rodney signed a receipt indicating that the facility's ARP had been explained to him and that he had received a copy of the offender handbook with the ARP provisions. *See* Rodney's acknowledgement, dated March 4, 2022; Defs.' MSJ, Exh. A-3 [doc. # 24-5].

3. Inmate grievances are filed on electronic kiosks in the inmate's housing area. The kiosk keeps a record of all grievances that have been filed.

4. The instructions for the appropriate step of the grievance procedure are also written at the top of the electronic grievance forms that the inmates complete on the kiosk.

5. The facility conducted a search of Rodney's kiosk history on February 8, 2023, when it received a copy of his complaint.

6. The search results indicated that, from the date he arrived at the facility through February 2023, Rodney had filed five offender requests and one offender grievance. A printout of the search results was attached thereto. *See* Secure Call Platform; Defs.' MSJ, Exh. A3[4] [doc. # 24-6].

7. The lone grievance that Rodney filed is a complaint regarding dietary needs unrelated to the allegations made in this lawsuit. *See* Offender Grievance; Defs.' MSJ, Exh. A4 [doc. # 24-7].

8. Hedgemon reviews step-three grievances at the RDC, but has never received a step-three grievance from Rodney concerning the allegations in this lawsuit.

(Johnny Hedgemon Declaration; MSJ, Exh. A [doc. # 24-3]).

---

[4] Brown and Berry submitted two exhibits that are labeled A3.

The RDC's ARP, as set forth in the offender handbook provides, in its entirety:

**ADMINISTRATIVE REMEDY PROCEDURE**

If an offender has a grievance while in this facility or for any reason the offender feels the personnel on duty cannot resolve your grievance, an offender may complete a grievance form. It will be taken through appropriate procedure for review. Offenders will be given an answer within thirty (30) days excluding weekends and holidays of the date of receipt of your grievance. Offenders are allowed to appeal the grievance for a second step review in the event the first response was not satisfactory. An answer to the second step review will be given within twenty-five (25) days excluding weekend and holidays of your request for an appeal. Offenders may request a third step appeal to the Warden and/or Sheriff. The offender will receive a response to his third step appeal within forty (40) days excluding weekends and holidays of the receipt of your third request.

Grievances must be filed within thirty (30) days of the incident unless the offender is unable to file the grievance within the thirty (30) days period because of medical reasons.

(Offender Handbook; Defs.' MSJ, Exh. A1 [doc. # 24-4]).

        c)       <u>Rodney's Response</u>

In response to Brown and Berry's motion, Rodney stated that he submitted several grievances for filing and followed the ARP, to the best of his ability. (Pl. Opp. Memo., pg. 4). However, he professed to have never received any replies to his grievances whatsoever, despite waiting several months at each step of the ARP. *Id.*

Rodney then described the ARP as authorizing a *forty*-day period for prison officials to provide a First Step Response, and then permitting the offender to proceed to Step Two, if the grievance is denied or no response is received. (Pl. Opp. Memo., pgs. 5-6). Rodney further explained that, "[c]ompleted appeals from the Secretary of the DPS&C or its designee within

forty-five days of the ARP screening officers['] receipt of your request." *Id.*, pg. 6.[5]

He also challenged an "enclosed" grievance form as "an informal, independently contrived document (not a 'First Step Response Form') that does not allow for the Plaintiff(s) to retain a copy of his complaint(s)." *Id.*  Rodney emphasized that if an offender is refused a request for copies to be made upon submission, or if the kiosk erases/loses his complaint, then the plaintiff has no record of submission. *Id.*, pgs. 6-7.

Rodney reiterated that he received no response, nor review, despite submitting the forms provided by the detention center authorities to the proper officials. *Id.*  In other words, "for all intents and purposes," his grievances "were never replied to, or destroyed/lost." *Id.*  Further, Warden Russell said, "I don't want that"! *Id.*

In his brief, Rodney agreed with Brown and Berry's contention that he did not exhaust the ARP, but only because they attempted to prevent its exhaustion. *Id.*, pg. 7.  Rodney noted that the kiosk printout showing his record of requests and grievance submissions does not reflect any action taken on them. *Id.* (citing Def. Exh. A3).  He also stressed that the kiosk does not have an option for filing a warden's review after the 30-day response deadline has passed. *Id.*  Instead, offenders must submit their appeals "via notebook paper or legal pad." *Id.*  In addition,

---

[5] Rodney appears to have confused the administrative remedy procedure provided by the Louisiana Department of Public Safety and Corrections ("LDPSC"), 22 LA. ADMIN. CODE PT. I, 325, with the RDC's ARP.  Perhaps contributing to his confusion is an official-looking form that he attached to his memorandum, which is entitled, "Administrative Remedy Procedure," with "River Bend Detention Center" inscribed directly beneath it.  (Pl. Opp. Memo., Exh. C1 [doc. # 33-1]).  The form appears to be prepopulated with the LDPSC's address and includes blank spaces for a statement of claims. *Id.*  Nevertheless, Rodney was required to comply with the grievance procedure at the facility where he was housed, i.e., the RDC. *See Stamps v. Wyles*, Civ. Action No. 20-0095, 2020 WL 7974297, at *5 (W.D. La. Nov. 19, 2020), *R&R adopted,* 2021 WL 42046 (W.D. La. Jan. 5, 2021).

the kiosk frequently suffers system failures. *Id.*, pgs. 7-8.  For example, in October 2023, a kiosk repairman made five visits to Rodney's housing unit to restore, reboot, and provide technical support for the kiosk. *Id.*

Rodney stated that he "testified by declaration (enclosed) that he has properly exhausted all remedies to the extent possible, where possible as required by 42 U.S.C. § 1997e." *Id.*, pg. 9. However, the only declaration Rodney attached to his brief was signed by fellow inmate, Robert Poole, who averred that,

> [o]ver the duration of my six-year stay at the [RDC] I have rarely if ever seen an administrative grievance carried out in the manner in which is dictated by 42 U.S.C. § 1997e.  Claimants no doubt submit them, however, the prison officials' general course of action is to either "destroy" or "lose"' the form entrusted to them.  If submitted electronically, it is not uncommon to receive no response, or for the grievance to remain "processing" well beyond the allotted time frame for response by the screening officer(s).  Nor is it any longer a surprise to find that the administrative grievance has been altogether removed from the queue completely. Such has been my experience here.  Neither the papers distributed or the electronic kiosk provide for copies for the inmates' record keeping, and vehement requests for action to be taken only results in discipline toward the claimant.  I have never heard from the Warden in any capacity though I too have submitted grievances and have attempted to follow the process as outlined by 42 U.S.C. § 1997e.

(Decl. of Robert Poole; Pl. Opp. Memo., Exh. 2 [doc. # 33-2]).

d)    Resolution

In support of their motion for summary judgment, Brown and Berry adduced competent summary judgment evidence to show:  1) that the RDC had an available grievance policy for offenders housed there; and 2)  the RDC never received a grievance pertaining to the event(s) at issue in this case, either initially, or at any further step of the ARP.

In response, Rodney stated that he submitted several grievances and followed the grievance procedure as best he could, to no avail.  Although, in the wake of the amendment to

11

Rule 56, the court now has the latitude to credit unsworn statements at the summary judgment stage,[6] Rodney's statements are entirely conclusory and, thus, prove insufficient to defeat summary judgment. *See Nelson v. Sollie*, No. 22-60461, 2023 WL 3863345, at *1–2 (5th Cir. June 7, 2023) (unpubl.) (citation omitted) (plaintiff's claim that he "exhausted his remedies by filing a grievance to which he never received a response" is "wholly conclusional and is insufficient to survive summary judgment); *Ryan v. Phillips*, 558 Fed. App'x. 477, 478 (5th Cir. 2014) (citation omitted) (plaintiff's "conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any informal or formal grievances"); *contrast, Favela v. Collier*, 91 F.4th 1210, 1213–14 (5th Cir. 2024) (plaintiff's declaration was not devoid of specific facts where it provided the general substance his step one grievance and stated approximately when that step one grievance was filed).

---

[6] *See Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (quotations omitted) ("New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . ,the material may be presented in a form that would not, in itself, be admissible at trial."); *Lozano v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019) (reasoning that considering whether a plaintiff's unsworn assertions "could have been presented in an admissible form . . . is particularly relevant where a pro se plaintiff's allegations form his entire response in opposition to summary judgment."); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible."); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record.").

Rodney also appears to argue that, in practice, the ARP at the RDC was unavailable to offenders, either, because officers did not provide relief to inmates, or because they regularly lost or deleted grievances.  However, Rodney has not adduced evidence to show that the RDC *never* provided relief via its ARP process.[7]  *Id*.  Furthermore, while Rodney's fellow inmate, Robert Poole, averred that he rarely, if ever, saw an administrative grievance *carried out* as contemplated by § 1997e, that does not mean that offenders are prohibited from submitting grievances, in the first instance.

In sum, on the existing record, no reasonable trier of fact could find that Rodney exhausted the first step of the available RDC grievance procedure for his claims that Brown and Berry subjected him to unconstitutional conditions of confinement.  *See Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party).[8]

e)    <u>Remedy for Failure to Exhaust</u>

The plain language of the PLRA precludes any further action on Rodney's claims until he

---

[7] To be sure, there is evidence that the RPC did not act on Rodney's unrelated grievance and offender requests that Rodney submitted.  *See* Def. Exh. A3.  However, that is a far cry from showing that the officers consistently failed to provide relief to all aggrieved inmates.  *See Ross, supra*.

[8] In this case, neither Rodney, nor Brown and Berry, have made a jury demand.  "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result."  *Jones v. United States*, 936 F.3d 318, 321 (5th Cir.2019) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)).  In this non-jury, pro se prisoner suit, the undersigned magistrate judge ordinarily is the trier of fact at a hearing held pursuant to *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *modified on other grounds*, 964 F.2d 400 (5th Cir.1992), which "amounts to a bench trial replete with credibility determinations and findings of fact."  *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995).

has fully exhausted the administrative remedy procedure.[9]  Dismissal is the remedy, and

although it is typically without prejudice,[10] the court is authorized to dismiss plaintiff's

complaint with prejudice to his right to re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *overruled by implication on other*

*grounds by Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007).

The foregoing approach is appropriate here.  Accordingly, if Rodney exhausts his

administrative remedies with respect to the claims raised herein, he may present these § 1983

claims again, but may not proceed in forma pauperis to do so.[11]

## Conclusion

For the above-stated reasons,

---

[9]  *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

[10]  *See, e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. App'x. 12, 13 (5th Cir. 2009).

[11]  Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules.  *Woodford, supra*.  At this point, Rodney's delay effectively may foreclose his ability to properly exhaust available administrative remedies.

IT IS RECOMMENDED that the motion for summary judgment [doc. # 24] filed by remaining Defendants, John Brown and Ronnie Berry be GRANTED, and that Plaintiff Steven Rodney's remaining claims be DISMISSED, without prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 11th day of March, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE